**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Dekethia Harris and Jamel Jenkins, Defendants,

Of whom Dekethia Harris is the Appellant.

In the interest a minor under the age of eighteen.

Appellate Case No. 2019-000188

———————————

Appeal From Anderson County
Tommy B. Edwards, Family Court Judge

———————————

Unpublished Opinion No. 2020-UP-229
Submitted June 30, 2020 – Filed July 31, 2020

———————————

**AFFIRMED**

———————————

J. Falkner Wilkes, of Greenville, for Appellant.

Amanda B. Stiles, of the South Carolina Department of
Social Services, of Greenville, for Respondent.

John Marshall Swails, Jr., of Greenville, for the Guardian
ad Litem.

**PER CURIAM:** Dekethia Harris (Mother) appeals the family court's order terminating her parental rights to Child 1 and Child 2 (collectively, children). On appeal, Mother argues the family court erred in finding clear and convincing evidence supported termination of parental rights (TPR) on the following grounds: (1) the children were harmed, and because of the severity or repetition of the abuse or neglect, it was not reasonably likely Mother's home could be made safe within twelve months; (2) Mother failed to remedy the conditions causing removal; and (3) the children had been in foster care for fifteen of the most recent twenty-two months. Mother also argues the family court erred in finding TPR was in the children's best interest. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

First, clear and convincing evidence showed the children's half-sibling (Sibling) was severely harmed in Mother's home and because of the severity of the abuse, it was not reasonably likely her home could be made safe within twelve months.[1] *See* S.C. Code Ann. § 63-7-2570(1) (Supp. 2019) (providing a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed . . . and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months. In determining the likelihood that the home can be made safe, the parent's previous abuse or neglect of the child or another child may be considered."); S.C. Code Ann. § 63-7-20(6)(a)(i) (Supp. 2019) ("'Child abuse or neglect' or 'harm' occurs when: (a) the parent, guardian, or other person responsible for the child's welfare: (i) inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child . . . ."). Specifically, Sibling suffered a non accidental injury in Mother's home that caused a traumatic brain injury, retinal hemorrhages, patterned and non patterned bruising over a large amount of his body, elevated liver and pancreas enzymes suggesting trauma to his abdomen, and kidney failure.

---

[1] Jamel Jenkins is the children and Sibling's father.

Further, due to the extensive injuries, experts in pediatric neurosurgery and child abuse pediatrics testified Sibling would rely on others to care for him throughout his life, and there is little chance his medical condition will significantly improve. Although Mother disputes the circumstances surrounding the injuries and denied culpability, experts testified Sibling's injuries were not the result of an accident and occurred during the timeframe Sibling was in Mother's home. In addition, Child 1 made disclosures implicating Mother in the infliction of the injuries. Although Mother now asserts she was not home when the injuries occurred, we find her failure to seek medical attention upon returning home and finding Sibling injured constituted harm, as evidenced by expert medical testimony that Sibling's prognosis would likely have been different if he had received medical treatment sooner. Additionally, Sibling's mother's testimony about the severity of his symptoms when she arrived at Mother's home after the injuries undermines Mother's argument that she was unaware of the seriousness of his condition. Furthermore, during the Department of Social Services (DSS) proceedings, Mother agreed pursuant to *Alford*[2] to a finding she physically abused Sibling and a finding she placed the children at a substantial risk of harm of physical abuse. Based on the foregoing, a child was harmed in Mother's home.

Further, clear and convincing evidence shows that due to the severity of the abuse, it was not reasonably likely Mother's home could be made safe within twelve months. Even if Jenkins inflicted the harm—as Mother now contends—Mother has remained in a relationship with him and continues to live with him. His presence in the home renders it unsafe for the children when considering the severity of Sibling's injuries and Jenkins's failure to complete his placement plan. Finally, although Mother did complete several aspects of her placement plan, she continued to deny responsibility in counseling and did not make behavioral changes that would make her home safe for the return of the children. Thus, clear and convincing evidence supports this ground.

Second, clear and convincing evidence showed Mother failed to remedy the conditions that caused the removal. *See* S.C. Code Ann. § 63-7-2570(2) (Supp. 2019) (stating a statutory ground for TPR is met when "[t]he child has been removed from the parent . . . and the parent has not remedied the conditions which caused the removal"). Mother was ordered to complete a placement plan on April 21, 2017, that required her to complete a psychological assessment, attend individual counseling based on recommendations from her psychological

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

evaluation, complete a STEAR program[3], and exhibit behavioral changes. Although Mother timely completed a psychological evaluation, counseling recommendations, and the STEAR program, she failed to exhibit several behavioral changes, including understanding her protective role to the children, acknowledging the actions that placed them and Sibling in danger, and ensuring her home was free of threats to the safety and well-being of the children. Mother failed to disclose the full extent of Sibling's injuries during her counseling sessions. Additionally, she remained in an ongoing relationship with Jenkins even though he failed to complete his court-ordered placement plan. Based on the foregoing, clear and convincing evidence showed Mother failed to remedy the conditions that caused the children's removal.

Third, clear and convincing evidence showed the children were in foster care for fifteen of the most recent twenty-two months. *See* S.C. Code Ann. § 63-7-2570(8) (Supp. 2019) (stating a statutory ground for TPR is met when "[t]he child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months"). At the time of the TPR hearing, the children had been in foster care for approximately thirty months. To the extent Mother argues DSS caused the delay in reunification, we find the delay in reunification was the result of Mother's inability to provide a safe home for the children. *See S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 336, 741 S.E.2d 739, 746 (2013) ("[S]ection 63-7-2570(8) may not be used to sever parental rights based solely on the fact that the child has spent fifteen of the past twenty-two months in foster care. The family court must find . . . that the delay in reunification of the family unit is attributable not to mistakes by the government, but to the parent's inability to provide an environment where the child will be nourished and protected."). Specifically, Mother remained in a relationship with Jenkins—whom she now implicates as the perpetrator of this abuse—despite his failure to complete his placement plan. Thus, Mother's home was not safe for reunification.

Finally, viewed from the children's perspective, we find TPR is in their best interest. Initially, we are concerned about the severity of the Sibling's injuries, which have negatively impacted his quality of life. We are also concerned about Mother's failure to acknowledge the cause and extent of his injuries and her ongoing relationship with Jenkins. As a result, it is unlikely Mother can provide a safe home for the children in the foreseeable future.

---

[3] STEAR is a DSS-approved batterer intervention program.

At the time of the TPR hearing, the children had been in foster care for approximately thirty months, and their foster parents expressed an interest in adopting them. Further, a relative has also expressed an interest in adopting the children. Because the children are doing well in foster care and TPR will help them achieve permanency, we find TPR is in their best interest.

As to Mother's argument that the family court erred by relying on the guardian ad litem's (Amanda Lane's) report, we find the family court properly considered the report—along with all other evidence presented at the TPR hearing—in determining TPR was in the children's best interest.[4] This case was reassigned from another guardian ad litem to Lane, who was also the guardian ad litem in Sibling's case, approximately one month before the TPR hearing. As part of her investigation of Sibling's case, Lane reviewed Sibling's medical records. We acknowledge Lane did not interview Mother or Jenkins; however, Lane testified their lawyer denied her request to speak to them as part of Sibling's case, and she believed all communication needed to be done through their lawyer. We also acknowledge Lane did not observe Mother and Jenkins's visit with the children; however, she explained Mother was upset about her being appointed as guardian ad litem in the children's case, and she did not want to create a hostile environment in front of the children. After being appointed to this case, Lane met with the children and the foster family, spoke to the DSS case worker and the children's therapist, and reviewed the DSS records and the previous guardian ad litem's reports. Based on the foregoing and Lane's lengthy involvement with Sibling's case, we find she conducted a sufficient investigation in this case. Further, Lane's report and recommendation of TPR was not dispositive. Rather, the family court found, and this court ultimately finds, TPR was in the children's best interest based on its review of all the evidence presented.

**AFFIRMED.**[5]

**WILLIAMS, KONDUROS, and HILL, JJ., concur.**

---

[4] This argument was not presented to the family court; nonetheless, we address the merits because it impacts minor children. *See Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000) ("[P]rocedural rules are subservient to the court's duty to zealously guard the rights of minors.").

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.